Kent, J.,
(after stating the facts,) thus delivered the opinion of the court.
This cause comes before the court upon a special verdict.
*Two questions have been made :
1. Whether the plaintiffs be not entitled to recover as for a total loss?
2. If not, then by what rule is a general average to bo liquidated.
The first point was settled by this court, in the case of Le Roy, Bayard & M'Evers v. Gouverneur.(a) That case *279 arose upon this same policy, and upon facts substantially the same. The question was on the construction of the *words in the memorandum, free from aver- [*212] age unless general; and the court decided, that to make the insurer liable, there must be an actual destruction of the article specified in the memorandum, and not merely such a technical loss of the article as would authorize an abandonment. Consequently, as the corn existed in that instance, the insurer was not liable for it, however deteriorated it might have been by the perils of the sea.
This decision was warranted and governed by the casa of Cocking v. Fraser; (a) which was a strong and .unanimous) determination of the court of king’s bench, upon a case reserved on the very point in question. In that case tho insurance was upon a cargo of fish from Newfoundland, to a port of discharge in Portugal, and which was Figara, Oh the passage the crew hove overboard part of the fish, for the general preservation of the ship and cargo, and the ship was obliged to put into Lisbon, which was upwards of one hundred miles from her port of discharge. It was there found upon survey that the fish were rendered of no value, through sea damage, and the ship did not proceed on her voyage. The court held the insurer liable for no more thp.n what he had paid into court as a general average on the cargo, and a particular average on the ship. Lord Mansfield observed, “ that the insurer was liable only for a total loss, and that the total loss here was the loss of the thing itself, and not any damage, however great while it exists. That in common cases, when the voyage is obstructed and not worth pursuing, it is a- total loss.' But the memorandum goes on the idea that the insurer is not to be liable for any damage however great.” Fuller, J., observed also, “ that the voyage being defeated, might be very material in cases not within the memorandum.” This decision, therefore, goes the whole length of settling that, *280 although in certain cases a total loss may be in whatever defeats the voyage, and will authorize an abandonment, this will not hold in the case of perishable articles within the memorandum. The insurer there is secure against all damage to them, whether great or small; whether it defeats the voyage, or only diminishes the price of the goods.
The memorandum prevents the loss from being [*218] *total, unless the article be burnt, sunk, captured, or otherwise completely destroyed; and, considering the difficulty of ascertaining how much of the loss arose by the perils of the sea, and how much by the perishable nature of the commodity, and the impositions to which insurers would be liable-in consequence of that difficulty, the rule of construction, as now settled, is the most salutary, by reason of its simplicity and certainty. This difficulty would remain in full force, if the.law was otherwise, and the insurer was to be held for damage to the perishable articles, when that damage was so great as to occasion a loss of the voyage. One great object of the rule would, in such case, be defeated.
In delivering our judgment, x have been the more particular in explaining'the former decision, and giving it my full acquiescence, from an impression which I received at the argument of this cause, that the decision was not sufficiently understood, or that it did not give all desirable satisfaction. The observation of Lord Kenyon, in the cause of M' Andrews v. Vaughan, 1 Marsh. 150, would seem also, as it stands at present without explanation, to be opposed to the rule we have adopted ; for, he said the insurer was liable not only when the article was actually destroyed, but when the voyage was lost. If by this observation was meant that the insurer was held when the voyage was lost, by some cause or peril not arising from the condition of the articles in the memorandum, it is not contrary to the rule contended for; but if it is to be understood- as extending to a loss of voyage, in consequence of damage, however great, to the articles in the memorandum, it is directly *281 contrary to the decision of Clocking v. Fraser,(a) and cannot be received at law.
It is to be observed that it is not stated in the verdict that no other vessel could be had at Newcastle to carry the cargo, but that the vessel in question could not there be repaired ; and it is found that she was speedily repaired at Philadelphia, and was ready for the voyage, but that it was given up and deemed lost in consequence of the unmerchantable condition of the cargo, and because no other cargo of the like kind (it being Jersey flint corn) could be there obtained. This was evidently the real cause of the loss *of the voyage, and, therefore, neither [*214] this, nor the former decision, apply to the case of a loss of voyage from injuries distinct from those happening to the perishable articles, such, for instance, as an irreparable damage to the vessel. That would be a loss of voyage in a case not within the memorandum, and liable to be regulated by other rules.(b)
*282 As the plaintiff is not entitled to recover as for a total loss, the next point that arises for consideration is, whether the plaintiff be not entitled to recover a genaral average, as fixed by the verdict.
A question here preliminarily arises, and that is, whether the verdict be contrary to evidence in stating that "the whole of the damage sustained by the corn was occasioned by, or in consequence of, the cutting away the mast of the vessel, for the general preservation.”
To support this finding, the evidence was, that in cutting away the mast, it splintered off at and below the partners, and tore away a piece of cloth which was nailed to the deck and mast; and by means of the splintering, and the removal of the cloth, vast quantities of water continued to rush into the hold of the vessel, until the stump of the mast was cut off, and a new coat nailed over the same, which occupied about an hour and a half; during all which time, and for several hours afterwards, the water made a free passage over the decks, and one pump' was continually going, the other having been carried away, and become totally disabled, by the fall of the mast. In addition to these facts, there is the deposition of a witness, who heard the captain, mate, and crew say, that the damage the corn sustained, was principally in consequence of cutting away the mainmast, &c.
Upon these facts we are not dissatisfied with the conclusion drawn by the jury. Ho other cause of direct injury *283 to the corn is found. The one stated must have essentially injured the corn. The injury was inevitable, and the cause was sufficient to have produced the whole effect. _ We think the conclusion a reasonable one. We are, therefore, to consider the mast as sacrificed for the general safety of the ship and cargo, and that in the act of sacrificing the mast, *or, as a necessary consequence of [*215] it, the corn was damaged, and this damage must be ’included in a general contribution. The corn being damaged by the cutting away of the mast, is to be considered, equally with the mast, a sacrifice for the common benefit: a price of safety to the rest: and it is founded on the clearest equity, that all the property and interest saved, ought to contribute their due proportion to this sacrifice. The plaintiff is, therefore, entitled to recover as for a general average, for the loss .sustained by the injury done to the corn, and two remaining questions are next to be settled. Abbott, 278: 1 East’s Rep. 228, by Lawrence, J„; Park, 124.
The one is whether, in the adjustment of average, the freight of the cargo to Madeira ought to have been estimated, and not the freight only paid at Philadelphia. In this case, we think the adjustment, as settled by the award, ought to stand: for that the freight actually gained or earned in the voyage, and not what the vessel would have earned if she had gone to Madeira, ought to be the rule of contribution. Abbott, 291, 292 ; Marsh. 467.
The o’ther question is, whether the totality of the contribution due to the plaintiffs, for the loss of their corn is recoverable in the first instance from the insurer.(a)
*284 We are of opinion that it is, because the loss arises wholly from a peril within the policy, and the plaintiff has a right to look for his indemnity from the person who has engaged to indemnify him from the peril. This argument appears conclusive. This will not lead to a multiplicity of suits any more than a different rule; for if the plaintiffs could recover only a contributory share from the defendant, they would be compelled to resort to the owner of the ship for the residue; and this suit over may as well'be brought by the insurer as the plaintiffs, for one great object of insurance is, promptly to re-invest the assured with his capital, lost by the perils of the sea, and thereby enable him to continue his commercial enterprises.
In addition to this, it appears to be the English practice for the insurer to pay, in the first instance, the adjusted average. Abbott, 2-96.
*We are, accordingly, of opinion, that the plaintiffs are entitled to recover a general average. That in adjusting this average, the freight has been properly estimated, and that the plaintiffs are not bound to look to the owner of the vessel for the proportion to be borne by the vessel and freight, and these points being established, the loss is to be considered as total, according to an agreement of the parties at the foot of the case.(a)
Lewis, Ch. J.
observed, he had delivered the opinion of the court in the case of Le Roy, Bayard & M' Evers against Gouverneur, on the same policy, and that as far as the present decision turned on the import of the exception free from average unless general, when applied to the corn, he fully assented to it. That the other questions arose upon an argument between the counsel, subjoined in a note *285 at the foot of the case, which had been omitted in copying the case delivered to him. He, therefore, had not considered them. He saw no objection, however, in concurring with the adjustment as to the quantum of freight to be charged with contribution to the general average; nor with the principle that the -underwriters, and not the owners and shippers, were to respond, in the first instance, to the assured for the general average receivable on the corn, if entitled to any within the terms of the contract of indemnity. But that he had great doubts on the other point, viz., whether the injury received by the corn from the jettison of the mast, and the consequent irruption of the sea water, could entitle it to a general average as between insurer and insured. He was stronly inclined to think it within the spirit and meaning of the terms of the exception: the object and design of which was to avoid and shut out, between the parties to the policy, every question on the cause of injury to the corn, w'hcre it might equally arise from the perishable nature of the commodity, as from external causes. This was a case of that description, and actually involved the question the assurer intended to steer clear of. For the evidence was, that the injury sustained by the corn was principally owing to the sea water getting in through the partners, before the coat could be replaced. That it appeared to him rather an ingenious contrivance on the part *of the assured to obtain under the [*217] form of a general, what he could not under that of a particular average. He, however, gave no opinion.
Livingston, J.
having been concerned in the cause, gave no opinion.
Judgment for the plaintiffs, according to the agreement on the case, as for a total loss.

 Since; reported, 1 Johns. Cases, 226.

 Park, 114; 1 Marsh. 144; Millar, 359; S. C. East. 25 Geo. III.

а) See Burnett v. Kensington, 7 D. & E. 222.

 Antecedently to the introduction of the memorandum, the insurer was responsible for any partial loss individually sustained by the subject of the insurance, under the words of the policy. To abridge this liability in the case of perishable articles, was the intention of the clause, “warranted free from average unless general;” because such commodities carrying within themselves the seeds of deterioration, it was very difficult to discriminate the partial injury induced by inherent causes, from such as might arise within the risks undertaken. If the words are construed as containing a warranty against all partial losses except that of gt reral average, then the underwriter will be exempted from every partial loss which is not a general average. Of this opinion were Lord Mansfield and Mr. Justice Buller, (Wilson v. Smith, 3 Burr. 1550. Mason v. Skurry, Park, 160, and Cocking v. Fraser,) cited in the decision of the court in the text. If the words are to be taken as creating a condition, by which the insurer is warranted free from partial individual loss, “unless," or “if there be not" a general average, then on a case of general average happening, the policy will be restored to its original generality, and the assured let in to recover for the whole of his partial loss. Such was the construction first given in the English courts, (Cantillon v. Loud. Ass. cited 3 Burr. 1553,) and since confirmed on solemn argument in the last case on this question. Burnelt v. Kensington, 7 D. & E. 210. The effect of considering the words an exception, is to reduce the memorandum to two risks; general average and stranding. Upon this latter event the *282 whole of the embarrassments the clause was designed to obviate would present themselves; for it would perhaps be impossible to apportion the damage so as to separate the quantum arising in consequence of the stranding (for which the underwriter would be liable) from that proceeding from inherent causes, for which he would not be liable. If the principles of Cantillon v. Lond. Ass. and Burnett v. Kensington, be adopted, this difficulty is removed; for on the event of a general average, or a stranding, the whole amount of the partial loss is imputed to the perils insured against; if neither of these events takes place, it is attributed to inherent causes. The rule, however, which is laid down in Cocking v. Fraser, is that acknowledged by the case of Maggrath v. Church.

 So under the clause of “ laboring, travelling,” &c. the insurer on the ship is liable to the owner, for whatever charges and expenses he is in the first instance obliged to bear and pay, though the cargo be incidentally benefited. Aliter, if the expenditure be totally for the cargo after the charge of the ship has ceased. Watson v. Marine Insurance Company, 7 Johns. Rep. 57. But where the insured on the vessel is also owner of the cargo, which and the freight are uninsured, the recovery from the underwriter, in case of a gone *284 rai average, can be for no more than the proportion due from the ship. Eor it would be an absurdity to give the assured a right of action against the underwriter, merely to create one against himself Jumel v. Marine Insurance Company, 7 Johns. Rep. 412.

 See Nelson v. Columbian Insurance Company, 3 Caines’ Rep. 110, n.